OPINION OF THE COURT
Levine, J.
The City of New York, Board of Education of the City, its Mayor and Chancellor of the City School District (hereinafter the municipal plaintiffs) have brought this action against the State and various State officials seeking declaratory and injunctive relief. They allege three causes of action in their amended complaint: (1) that the present State statutory scheme for funding public education denies the school children of New York City their educational rights guaranteed by the Education Article of the State Constitution (NY Const, art XI, § 1); (2) that the State’s funding of public schools provides separate and unequal treatment for the public schools of New York City in violation of the Equal Protection Clauses of the Federal and State Constitutions (US Const 14th Amend; NY Const, art I, § 11); and (3) that the disparate impact of the State’s funding scheme for public education on members of racial and ethnic minority groups in New York City violates title VI of the Federal Civil Rights Act of 1964 (42 USC § 2000d et seq.) as amended and its implementing regulations.
We agree with the courts below that the municipal plaintiffs lack the legal capacity to bring this suit against the State. Despite their contrary claims, the traditional principle throughout the United States has been that municipalities and other local governmental corporate entities and their officers lack capacity to mount constitutional challenges to acts of the State and State legislation. This general incapacity to sue flows from judicial recognition of the juridical as well as political relationship between those entities and the State. Constitutionally as well as a matter of historical fact, munici *290 pal corporate bodies — counties, towns and school districts — are merely subdivisions of the State, created by the State for the convenient carrying out of the State’s governmental powers and responsibilities as its agents. Viewed, therefore, by the courts as purely creatures or agents of the State, it followed that municipal corporate bodies cannot have the right to contest the actions of their principal or creator affecting them in their governmental capacity or as representatives of their inhabitants. Thus, the United States Supreme Court has held:
" 'A municipal corporation is simply a political subdivision of the State, and exists by virtue of the exercise of the power of the State through its legislative department. The legislature could at any time terminate the existence of the corporation itself, and provide other and different means for the government of the district comprised within the limits of the former city. The city is the creature of the State.’ ” (Trenton v New Jersey, 262 US 182, 189-190, quoting Worcester v Street Ry. Co., 196 US 539, 548.)
"The distinction between the municipality as an agent of the State for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations” (id., at 191 [challenge to New Jersey statute under Due Process and Contract Clauses of the US Constitution]).
"A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator” (Williams v Mayor, 289 US 36, 40 [Cardozo, J.] [Equal Protection Clause challenge to Maryland statute]).
New York has long followed the Federal rationale for finding that municipalities lack the capacity to bring suit to invalidate State legislation (see, County of Albany v Hooker, 204 NY 1; City of New York v Village of Lawrence, 250 NY 429; Robertson v Zimmermann, 268 NY 52). As stated in Black Riv. Regulating Dist. v Adirondack League Club (307 NY 475, appeal dismissed 351 US 922):
*291 "The courts of this State from very early times have consistently applied the Federal rule in holding that political power conferred by the Legislature confers no vested right as against the government itself. * * * The concept of the supreme power of the Legislature over its creatures has been respected and followed in many decisions.” (Id., at 488.)
The rationale was succinctly described in Matter of County of Cayuga v McHugh (4 NY2d 609):
"Counties, as civil divisions of a State, had their origin in England and were formed to aid in the more convenient administration of government * * *. So it is today that counties are mere political subdivisions of the State, created by the State Legislature and possessing no more power save that deputed to them by that body.” (Id., at 614.)
Moreover, our Court has extended the doctrine of no capacity to sue by municipal corporate bodies to a wide variety of challenges based as well upon claimed violations of the State Constitution (see, Black Riv. Regulating Dist. v Adirondack League Club, supra; City of New York v Village of Lawrence, supra; County of Albany v Hooker, supra).
Municipal officials and members of municipal administrative or legislative boards suffer the same lack of capacity to sue the State with the municipal corporate bodies they represent (see, Williams v Mayor, 289 US 36, supra). As we held in Black Riv. Regulating Dist. v Adirondack League Club (307 NY, at 489, supra):
"As we have pointed out, the district board has no special character different from that of the State. Its only purpose is to construct reservoirs and that, concededly, is a State purpose in the interest of public health, safety and welfare (Conservation Law, § 431). Not only as a board, but also as individuals, the plaintiffs are without power to challenge the validity of the act or the Constitution” (emphasis supplied).
The only exceptions to the general rule barring local governmental challenges to State legislation which have been identified in the case law are: (1) an express statutory authorization to bring such a suit (County of Albany v Hooker, 204 NY, at 9, supra); (2) where the State legislation adversely affects a municipality’s proprietary interest in a specific fund *292 of moneys (County of Rensselaer v Regan, 173 AD2d 37, affd 80 NY2d 988; Matter of Town of Moreau v County of Saratoga, 142 AD2d 864); (3) where the State statute impinges upon "Home Rule” powers of a municipality constitutionally guaranteed under article IX of the State Constitution (Town of Black Brook v State of New York, 41 NY2d 486); and (4) where "the municipal challengers assert that if they are obliged to comply with the State statute they will by that very compliance be forced to violate a constitutional proscription” (Matter of Jeter v Ellenville Cent. School Disk, 41 NY2d 283, 287 [citing Board of Educ. v Allen, 20 NY2d 109, affd 392 US 236]).
The arguments by the municipal plaintiffs favoring their capacity to sue are unpersuasive. First, they contend that our decision in Levittown (Board of Educ., Levittown Union Free School Disk v Nyquist, 57 NY2d 27) constitutes controlling precedent in favor of their capacity to sue. As the municipal plaintiffs have virtually conceded, however, when Levittown reached the Court of Appeals, the State did not appeal on the capacity to sue issue. The issue of lack of capacity to sue does not go to the jurisdiction of the court, as is the case when the plaintiffs lack standing. Rather, lack of capacity to sue is a ground for dismissal which must be raised by motion and is otherwise waived (CPLR 3211 [a] [3]; [e]). It follows, then, that if the defense of lack of capacity to sue can be waived by merely failing to raise it, it may also be abandoned on appeal and, in fact, was abandoned by the State when its appeal in Levittown reached our Court. Therefore, the Levittown decision is not precedent for the municipal plaintiffs’ capacity to sue in this case.
Alternatively, the municipal plaintiffs argue that our decision in Community Bd. 7 v Schaffer (84 NY2d 148) supports their capacity to sue in this case. To be sure, Community Bd. 7 held that a municipal body’s capacity to sue may arise by necessary implication. However, Community Bd. 7 unequivocally holds that, in the absence of express authority to bring the specific action in question the plaintiff must establish a legislative intent to confer such capacity to sue by inference. "Governmental entities created by legislative enactment present similar capacity problems. Being artificial creatures of statute, such entities have neither an inherent nor a common-law right to sue. Rather, the right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate” (id., at 155-156 [emphasis *293 supplied]). Thus, in Community Bd. 7, even though the plaintiff had an identifiable functional responsibility in the subject matter of the lawsuit, this Court concluded it lacked capacity to bring the suit because various inclusions or omissions in the enabling legislation negated any inference of a legislative intent to confer that power (id., at 157-158).
The municipal plaintiffs have not pointed to any express statutory language or legislative history which would necessarily imply that the Legislature intended to confer upon them the capacity to bring a suit challenging State legislation. The fact that the Legislature has expressly conferred the power to sue upon the City or the City School District in furtherance of their general statutory municipal or educational responsibilities is clearly insufficient from which to imply authority to bring suit against the State itself to declare that the public school funding scheme enacted by the Legislature is unconstitutional (see, County of Albany v Hooker, 204 NY 1, supra [discussing extensively the difference between the general power to sue by a municipal corporation, and the same municipality’s lack of capacity to sue its creator, the State]). Indeed, from early times municipalities have had the statutory general power to sue and be sued in their own name (see, People v Ingersoll, 58 NY 1, 28-31; see also, County Law § 51 [current authority for counties to sue in their own name]), but that power has always been limited "[i]n political and governmental matters [because] municipalities are the representatives of the sovereignty of the State, and auxiliary to it” (People v Ingersoll, 58 NY, at 29, supra). Moreover, in view of the manifest improbability that the Legislature would have intended to authorize the municipal plaintiffs to challenge the constitutionality of its own public school funding allocation formula, the evidence from "necessary implication” would have to be particularly strong to support capacity to sue here, and it certainly is not. Hence, Community Bd. 7 v Schaffer does not provide a precedential basis for capacity to sue here.
Next, the municipal plaintiffs argue that the lack of capacity to sue doctrine only applies to (1) statutory restrictions on a municipality’s power; and (2) State-mandated compulsion to make expenditures. This contention ignores our precedents in which lack of capacity to sue has applied to block challenges to a far wider variety of State actions having differing adverse impacts on local governmental bodies and their constituents (see, Matter of County of Cayuga v McHugh, supra; Black Riv. Regulating Dist. v Adirondack League Club, supra; Robertson *294 v Zimmermann, supra; and County of Albany v Hooker, supra). County of Albany v Hooker is particularly instructive because it involved a claim quite analogous to the claims of the municipal plaintiffs in the instant case. Albany County relied upon a 1905 amendment to the State Constitution authorizing the State to incur debts of up to $50 million for improvements to State highways (204 NY 1, 5, supra). To pay the principal and interest on such debts, the amendment provided for the creation of a sinking fund made up of at least half State moneys and the remainder from counties and towns where the improvements were located. The amendment guaranteed that enabling statutes would equitably apportion the highway improvements among the counties (id.). Not unlike the claim here of an unfair allocation of educational funding violating the State Constitution, in County of Albany v Hooker, the county challenged 1911 State legislation providing for highway improvements elsewhere in the State, as violating the constitutional mandate for equitable apportionment of highway improvements. This Court determined that the County of Albany lacked the capacity to bring the suit. We recognized that the underlying purpose of the action was to vindicate the interests and rights of the inhabitants of the county to a fair apportionment of the public moneys devoted to highway improvement (id., at 17). We held in Hooker, however, that counties lack the capacity to sue the State to protect such rights of or redress such wrongs or injuries to their citizens (id., at 14). The holding in County of Albany v Hooker is directly on point regarding the lack of capacity of the municipal plaintiffs to sue in the instant case.
"With no fund or property in existence, the title to which is in the county, and no funds or property in the possession of another to which the county is entitled to possession, and the entire subject being one of governmental and public policy, independent of the corporate rights of the county, the action cannot be maintained by the plaintiff, and the wrong, if any, created and existing by the acts of the legislature, must be corrected by the legislature, or by an action where the people, as distinguished from a municipal corporate body, are before the court” (id., at 18-19).
The only remaining argument made by the municipal plaintiffs in favor of their capacity to sue is that they are challenging legislation which adversely affects the City’s proprietary *295 interests. Clearly, however, they fail to point to any specific fund in which they are entitled to a proprietary interest. Their claim is merely to a greater portion of the general State funds which the Legislature chooses to appropriate for public education. Accordingly, they lack a proprietary interest in a fund or property to which their claims relate and cannot ground capacity to sue on that basis (see, County of Albany v Hooker, supra) under the criteria set in Matter of Town of Moreau v County of Saratoga (142 AD2d 864, supra) and County of Rensselaer v Regan (173 AD2d 37, supra). Finding a proprietary interest of the City of New York sufficient to confer capacity to sue without regard to a cognizable right in a specific fund would create a municipal power to sue the State in any dispute over the appropriate amount of State aid to a governmental subdivision or the appropriate State/local mix of shared governmental expenses. The narrow proprietary interest exception would then ultimately swallow up the general rule barring suit against the State by local governments.
Although not a point advanced by the municipal plaintiffs on this appeal, the dissent seeks to bring this case within the already noted exception to the lack of capacity to sue rule, where municipal officials contend that " 'if they are obliged to comply with the State statute they will by that very compliance be forced to violate a constitutional proscription’ ” (dissenting opn, at 298-299 [quoting Matter of Jeter v Ellenville Cent. School Dist., 41 NY2d 283, 287, supra] [emphasis supplied]). The dissent fails to cite to any specific constitutional "proscription”, that is, prohibition, that the State school funding formula forces the municipal officials to violate. Surely, it cannot be persuasively argued that the City officials in question should be held accountable either under the Equal Protection Clause or the State Constitution’s public Education Article by reason of the alleged State underfunding of the New York City school system over which they have absolutely no control (see, Athanson v Grosso, 411 F Supp 1153).
Thus, the municipal plaintiffs have failed to bring their claims within any recognized exception to the general rule that municipalities lack capacity to sue the State and their action must be dismissed. We decline the invitation to erode that general rule. Our adherence to that rule is not, as suggested by the dissent "a regression into formalism and rigidity” (dissenting opn, at 303). The lack of capacity of municipalities to sue the State is a necessary outgrowth of separa *296 tian of powers doctrine: it expresses the extreme reluctance of courts to intrude in the political relationships between the Legislature, the State and its governmental subdivisions.
The order of the Appellate Division should be affirmed, with costs.