[821 NE2d 114, 787 NYS2d 689]

In the Matter of John A. Graziano, as Election Commissioner of the County of Albany and as Member of the Board of Elections of the County of Albany, Appellant, v County of Albany et al., Respondents.

Argued October 13, 2004; decided November 30, 2004

476

## POINTS OF COUNSEL

*DerOhannesian & DerOhannesian,* Albany (*Paul DerOhannesian II* of counsel), for appellant. I. The County of Albany's laws and actions violate the "equal representation" requirement of the New York Constitution and Election Law § 3-300. (*Matter of Fugazy v Kern,* 280 NY 375; *Matter of O'Keeffe v Cohen,* 275 NY 550; *County of Chautauqua v Chautauqua County Employees' Unit 6300 of Local 807 of Civ. Serv. Employees' Assn.,* 181 AD2d 1052; *Matter of Board of Elections v O'Rourke,* 210 AD2d 402; *Matter of Starr v Meisser,* 67 Misc 2d 297, 39 AD2d 712, 33 NY2d 748.) II. Commissioner Graziano has standing to challenge the County of Albany's violation of the New York State Constitution and Election Law § 3-300. (*Matter of Dairylea Coop. v Walkley,* 38 NY2d 6; *Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *Matter of New York Assn. of Convenience Stores v Urbach,* 230 AD2d 338; *Silver v Pataki,* 96 NY2d 532; *Clinton v City of New York,* 524 US 417; *Baker v Carr,* 369 US 186; *Boryszewski v Brydges,* 37 NY2d 361.) III. The Appellate Division confused discretionary and ministerial acts. (*Matter of Wicksel v Cohen,* 262 NY 446; *Gagliardo v Colascione,* 153 AD2d 710; *Matter of Bridgham v Tutunjian,* 84 AD2d 853; *Matter of Lenihan v Blackwell,* 209 AD2d 1048.)

*Michael C. Lynch, County Attorney,* Albany, for respondents. I. The Appellate Division properly dismissed the petition for lack of standing in accord with Election Law § 3-212 (2) and § 3-300. II. The Board of Elections is subject to the County's "hiring freeze" and thus the Board's appointments of personnel must be preapproved by the County Committee to Fill Vacancies.

## OPINION OF THE COURT

GRAFFEO, J.

The issue on appeal is whether a single election commissioner may bring suit to challenge county actions that allegedly impair the equal representation of the major political parties in the staffing of a local board of elections. We conclude that the right to pursue such a claim is implicit in the constitutional and statutory requirement of balanced partisan representation on local boards of elections.

The Albany County Board of Elections consists of two commissioners (*see* Election Law § 3-200 [2]), one from each of the two major political parties. Petitioner John Graziano, the Republican commissioner, commenced this combined declaratory judgment action and CPLR article 78 proceeding contest-

ing the actions of the County of Albany relating to Board staffing and funding. Petitioner sought a judgment declaring that the Board enjoyed independent discretion both to appoint and dismiss staff and to spend funds within its appropriation in furtherance of its statutory obligations. He also sought an order enjoining the County from interfering with Board appointments. Michael Monescalchi, the Democratic commissioner, did not authorize the litigation, nor did he join the suit.

The petition contains allegations raising two distinct claims. Petitioner alleges that the County had applied a hiring freeze in a manner that impaired Board functions and had failed to authorize spending to obtain training for Board employees that he claimed was essential to the proper functioning of the Board. In addition, petitioner asserted that the County had delayed and interfered with Board hiring decisions in a manner that resulted in political imbalance in staffing on the Board on multiple occasions over a two-year period to the detriment of his political party.

In response to the petition, the County moved to dismiss the proceeding relying on Election Law § 3-212 (2), which requires that all actions of local boards of elections be supported by "a majority vote of the commissioners." The County argued that, as a single commissioner on Albany County's two-commissioner Board of Elections, petitioner lacked the authority to pursue his claim because the lawsuit was not supported by majority vote of the Board.

Supreme Court denied the motion to dismiss. Without providing the County an opportunity to answer, Supreme Court addressed the merits, determining that the Board enjoyed complete authority to appoint personnel and that the County's actions, principally the imposition of a hiring freeze, had improperly undermined Board authority.

The Appellate Division reversed the judgment and dismissed the petition, finding that as a sole commissioner of a two-commissioner board of elections, petitioner could not pursue his claim. We modify the judgment of the Appellate Division by reinstating petitioner's claim in part and remitting this matter to Supreme Court for further proceedings.

The County's challenge to petitioner's ability to bring suit raises the related issues of capacity and standing. "Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing. As a general matter, capacity

concerns a litigant's power to appear and bring its grievance before the court" (*Silver v Pataki*, 96 NY2d 532, 537 [2001] [citation and internal quotation marks omitted]). The issue of capacity often arises in suits brought by governmental entities (*see e.g. Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148 [1994]). "Being artificial creatures of statute, such entities have neither an inherent nor a common-law right to sue. Rather their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate" (*id.* at 155-156). Capacity to sue may be expressly granted in enabling legislation or it may be inferred from review of the entity's statutory functions or responsibilities.

Standing involves a determination of whether "the party seeking relief has a sufficiently cognizable stake in the outcome so as to cast[ ] the dispute in a form traditionally capable of judicial resolution" (*id.* at 155 [internal quotation marks and citations omitted]). The two-part standing inquiry is designed to determine whether the party who is bringing suit is a proper party to request an adjudication of the dispute, as follows:

> "First, a plaintiff must show 'injury in fact,' meaning that plaintiff will actually be harmed by the challenged . . . action. As the term itself implies, the injury must be more than conjectural. Second, the injury a plaintiff asserts must fall within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted" (*New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004] [citations omitted]).

Without both capacity and standing, a party lacks authority to sue.

In this case, the County did not dispute that the Board of Elections, a governmental entity, has the capacity to commence litigation. Rather, it argued that petitioner—a single election commissioner—lacked such authority because Election Law § 3-212 (2) requires that "[a]ll actions of the board shall require a majority vote of the commissioners prescribed by law for such board." The County therefore viewed the petition as an attempt to act on behalf of the Board absent the requisite vote of the other election commissioner.

■ We agree with the County that petitioner lacked capacity to pursue the part of his claim predicated on the County's

interference with Board functions as a whole. Petitioner alleged that the County's imposition of a hiring freeze and its refusal to authorize the expenditure of funds for training impaired the ability of Board staff to properly prepare for upcoming elections. This aspect of the claim addressed the broad functioning of the Board. A lawsuit that raises concerns affecting the staff of both political parties is an "action" requiring approval of a majority of the commissioners under Election Law § 3-212 (2), in this case both petitioner and the Democratic commissioner. Absent such approval, petitioner lacked capacity to pursue those complaints against the County.

The same is not true of petitioner's other claim—that the County's actions resulted in intermittent political imbalance on the Albany County Board of Elections. This assertion implicates New York Constitution, article II, § 8, which mandates that all laws affecting the administration of boards of elections "shall secure equal representation of the two political parties which . . . cast the highest and the next highest number of votes." Election Law § 3-300 similarly requires "equal representation of the major political parties" on boards of elections. The requirement of bipartisanship on local boards of elections is an important component of our democratic process for its purpose is to ensure fair elections.

Election commissioners are appointed by the county legislative body based on certificates of party recommendation filed by the chairman or secretary of the county committee of the appropriate political party (Election Law § 3-204). Thus, inherent in the statutory scheme is the requirement that each election commissioner be chosen by his or her party to represent its interests on the board of elections. As an individual election commissioner, petitioner therefore performs two distinct statutory functions—he assists his cocommissioner in the administration of the Board and he safeguards the equal representation rights of his party. When fulfilling the latter function, we conclude that petitioner may act alone to challenge the actions of the County. Petitioner's capacity to sue to vindicate political interests grounded in the language of the Constitution and the Election Law is inherent in petitioner's unique role as guardian of the rights of his party and must be implied from the constitutional and statutory requirement of equal representation. Recognition of such a right ensures that attempts to disrupt the delicate balance required for the fair administration of elections are not insulated from judicial review.

Election Law § 3-212 (2)'s requirement that "[a]ll actions of the board shall require a majority vote" does not require a different result. The constitutional and statutory equal representation guarantee encourages even-handed application of the Election Law and when this bipartisan balance is not maintained, the public interest is affected. But a concrete injury is not suffered by the board of elections as a whole—it is the political party that has sustained an actionable injury. Thus, when a commissioner files a claim to assure equal representation on behalf of his or her political party, Election Law § 3-212 (2) is not implicated because the initiation of a political imbalance lawsuit is simply not board action that requires a majority vote.

We also conclude, contrary to the dissent, that petitioner alleged an injury in fact sufficient to confer standing to pursue his claim. Because the County's objection to petitioner's authority to bring suit was made in a pre-answer motion to dismiss, we must assume the truth of petitioner's allegations and afford petitioner the benefit of every favorable inference (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151-152 [2002]). Applying this standard, the petition states a cognizable claim that the County's actions—particularly repeated delays in authorizing hiring requests without reasonable basis—resulted in unequal political representation on the Board on multiple occasions over a two-year period.

In addition to generally asserting that the County had delayed approving appointments causing a political imbalance in Board staffing, petitioner detailed a specific pattern of "delay, interference and rejection" of Board appointments, resulting in some cases in positions being left vacant for up to five months. Petitioner charted a comparison of the dates that particular positions were vacated against the dates the County eventually approved new appointees on the payroll, illustrating that vacancies frequently persisted for periods ranging from one to five months. Since the vacancies did not occur in pairs, we cannot presume that every time a Republican position was vacated there was a simultaneous vacancy in the Democratic staff. Rather, the petition alleges that the prolonged vacancies resulted in periods of political imbalance between the two segments of Board employees. Petitioner, of course, has no standing to complain of political imbalance suffered by the Democratic party—but he does have standing to contest the disadvantage to his own party. That the other political party may also have suffered periods of unequal representation does not rob petitioner

of the right to pursue his claim that the County unreasonably delayed in approving hiring requests to the detriment of his party.

Petitioner alleged that the periods of political imbalance were the result of intentional county delay, not a failure of the Board to find suitable employees in a timely manner. For example, petitioner noted that where one employee departed on December 5, 2002, the Board had selected another—Jessica Gaul—to start the next day. However, the County did not allow Gaul to join the payroll until February 12, 2003, delaying the appointment for two months. Petitioner stated that Gaul was a Republican and asserted that this instance of delay caused a political imbalance in Board staffing during the period the position remained vacant. This example indicates that the Republicans were short-staffed for two months. In sum, assuming his allegations to be true, petitioner has alleged an injury in fact to his party that is different in kind or degree from that suffered by the Board or the public at large.

As we have affirmed the dismissal of part of petitioner's claim, it is evident that we agree with the dissent's conclusion that some of petitioner's allegations did not involve political imbalance and therefore were insufficient to support his claim against the County. However, the unequal representation allegations detailed above were adequate to allege injury in fact sufficient to survive the motion to dismiss. The dissent has failed to assume the truth of these allegations and would effectively require petitioner to prove the merits of his claim in order to withstand the motion to dismiss. But, given the procedural posture of this case, we are obligated to give petitioner the benefit of every favorable inference. Thus, we do not find petitioner's statements that the County's actions caused periods of political imbalance to be conclusory—we see them as factual allegations that must be presumed to be true for purposes of resolving the motion to dismiss.

We hold that petitioner has capacity and standing and is entitled to resolution of his political imbalance claim. Therefore, the County's motion to dismiss should have been denied with respect to this claim only, the County should have answered the complaint and a hearing should have been held to resolve the factual issues, including whether the County interfered with personnel hiring within the Board's budget appropriation in a manner that resulted in periods of unequal political staff allocation. Because Supreme Court's merits analysis focused on the

general allegations of impairment of Board functions—the cause of action that should have been dismissed—rather than the political imbalance claim, this matter must be returned to Supreme Court for further proceedings.

Accordingly, the order of the Appellate Division should be modified, without costs, by remitting to Supreme Court for further proceedings in accordance with the opinion and, as so modified, affirmed.

ROSENBLATT, J. (dissenting in part). The plain language of Election Law § 3-212 (2) provides that the "majority" of a board of elections must authorize any action by the board. The Appellate Division unanimously concluded that this provision prohibits a single commissioner from bringing suit on behalf of a board of elections. No one can fault that Court for adopting this interpretation; indeed, it is difficult to read the statute any other way.

The majority, however, concludes that, because the State Constitution mandates equal partisan representation on boards of elections, Commissioner Graziano is authorized to go to court based only on his insufficient claims of imbalance. I dissent because Graziano has failed to allege an unequal representation. In my view, an aggrieved elections commissioner has capacity to sue, but a commissioner who does not allege an actionable grievance has no standing to do so.

I agree that in a proper case—one in which a single commissioner properly alleges a threat to a board's partisan equilibrium—the statute's plain language should yield and the commissioner should have capacity to sue. When a board of elections becomes unbalanced along party lines because of a practice imposed on it by an outside governmental entity, applying the facial command of Election Law § 3-212 (2) would impair the statutory and constitutional scheme set forth by Election Law § 3-300 and New York Constitution, article II, § 8. The threshold for suit, however, should not be easy to meet. Even when justified by a compelling constitutional purpose, I think it unacceptable to cast aside an explicit legislative command based on a claim so bereft of substance as the one before us. In short, Graziano lacks standing.

As this Court observed in *Society of Plastics Indus., Inc. v County of Suffolk* (77 NY2d 761, 772-773 [1991]), we require the party seeking review to allege an injury in fact to ensure that it "has some concrete interest in prosecuting the action

which casts the dispute 'in a form traditionally capable of judicial resolution.' The requirement of injury in fact for standing purposes is closely aligned with our policy not to render advisory opinions" (citations omitted). This interest becomes all the more pressing when, as here, we look beyond the plain reading of a duly enacted statute to find an implied cause of action in our State Constitution. In recognizing capacity to remedy an unconstitutional disequilibrium on a board of elections, we should not relax our well-established standing jurisprudence.

The majority insists that we fail both to assume the truth of Graziano's allegations and give him the benefit of every favorable inference. On the contrary, no amount of assumption and inference can validate inadequate pleadings. Although it has industriously mined the pleadings, the majority has not identified a single claim by Graziano of an injury to the Republicans arising out of imbalance on the Board. We have plumbed the record for any and every inferences favorable to Graziano, and found it wanting.

In his effort to rebut the County's argument that he lacked standing, Graziano fails to claim that the County's hiring policies diminished his political party's representation on the Board. In his petition, Graziano generically maintains that the County has "usurped the Board's authority . . . to maintain a proper balance of staff positions between the two major parties." Elsewhere, he argues that the County's policies "caused an imbalance in the 'equal representation of the two political parties' that the Board is constitutionally required to maintain in its composition."

These conclusory arguments do not amount to a claim of injury to the Republicans. Graziano's submissions include a litany of allegations concerning delays and obstructions in the hiring of Board staff, which, he maintains, resulted in political imbalances on the Board. But the claims he articulates—and at great length—fall far short of the mark. Alleging repeated delays in authorizing new hires does not spell out a political disequilibrium detrimental to one's own political party. In and of itself, a delay does not disserve one political party more than the other. Further, claiming county interference with Board hiring is different from alleging an injury unique to Republicans on the Board. Graziano includes a chart detailing the effects of a hiring freeze, but a hiring freeze and even a generalized workforce shortage do not constitute harm to *his* political party. Likewise, an allegation of interim shortages that alternately affect both

parties does not state a claim that the County's practices have placed Graziano's party at a consequential disadvantage. Rather, such impairments suggest an injury to the Board as a whole.

Graziano supplies this Court with a catalogue of alleged grievances that, as he presents them in his pleadings, do not address the issue of unequal Republican representation. I could accept as given that the County obstructed Board hiring. But a claim of county interference is readily distinguishable from a suit claiming that county interference uniquely disadvantaged Graziano's political party. To rebut the County's standing challenge, Graziano needed only to jump the shortest of pleadings hurdles, with a straightforward complaint alleging injury unique to his party. He does not.

When all is said and done, Graziano offers nothing more than the hollow assertion that the County's decision to block the appointment of two election specialists—one Democratic and one Republican—upsets the political equilibrium on the Board staff. On its face, however, these two vacancies reflect equal representation (or equal diminution), as opposed to an impermissible partisan tilt against Graziano's party. Graziano thus advances his claim of partisan imbalance without even suggesting, let alone alleging, that his own party was the least bit shortchanged. Having failed to allege a legally cognizable injury to his party, Graziano lacks standing and his claim was properly dismissed.

I therefore respectfully dissent in part, and would affirm the order of the Appellate Division dismissing the petition.

Judges CIPARICK, READ and R.S. SMITH concur with Judge GRAFFEO; Judge ROSENBLATT dissents in part and votes to affirm in a separate opinion in which Chief Judge KAYE and Judge G.B. SMITH concur.

Order modified, etc.