OPINION OF THE COURT
Michael C. Lynch, J.
In March, 2010, the County of Nassau and its two election commissioners (hereinafter the County plaintiffs), commenced this combined action/proceeding in the County of Nassau essentially challenging the constitutionality of the New York Election Reform and Modernization Act of 2005 (ERMA) (L 2005, ch 181, as amended by L 2007, ch 506) and the December 15, 2009 resolution of the New York State Board of Elections (hereinafter Board) certifying the use of electronic voting machines or systems pursuant to Election Law § 7-201.
By decision and order (Woodard, J.) dated October 13, 2010, the court granted the State of New York’s (hereinafter State) application changing the venue of the entire action from Nassau County to the County of Albany. In so finding, the court referred the respective motions of the State and the Board seeking to dismiss the petition/complaint to Albany County for resolution. Those motions to dismiss are addressed in this decision.
Following oral argument in Albany County on March 18, 2011, and at the court’s invitation, the parties submitted supplemental memoranda, as listed below, intended to address certain developments since the motions were filed.
In United States v New York State Bd. of Elections (06 CV 0263 [ND NY]), the Federal District Court issued various remedial orders including a May 20, 2010 order (Sharpe, J.) directing the County to utilize optical scan voting machines compliant with the Help America Vote Act (42 USC §§ 15301-15545) (HAVA) for the fall 2010 elections (see exhibit Nassau 39 annexed to State’s motion to dismiss). As a predicate to issuing the injunction, the District Court found that lever voting machines utilized in New York were not in compliance with HAVA. As such, the District Court directed the County to accept and utilize HAVA-compliant optical scan voting systems. The County complied and utilized the ES & S scanners in the fall 2010 elections.
Following the County’s appeal from the May 20, 2010 injunction order, the United States Court of Appeals for the Second Circuit issued an order, dated September 7, 2010, affirming the injunction. Pertinent heré, the Second Circuit recognized that *711 the County had “commenced litigation in state court challenging the constitutionality of ERMA under the constitution of New York State. Nothing is preventing Nassau from pursuing that litigation.” The quoted phrase confirms that the present action/proceeding is not preempted by the federal litigation. Nor, as the State and Board claim, is the United States Attorney a necessary party in this litigation, given the Second Circuit’s recognition that even if the County is successful in state court, the County would not be precluded “from filing suit in federal district court to dispute whether its lever voting machines are HAVA-compliant.” The point of distinction is that the County plaintiffs’ challenge in this litigation pertains to ERMA, not HAVA.
It is also important to recognize that article 9 of the Election Law was amended during 2010 to provide for the canvassing of ballots when ballot scanners have been utilized (L 2010, ch 163 [eff July 7, 2010]). While this legislation was enacted after the subject motions were filed, the issues presented will be addressed in accord with the law as it exists today (see Black Riv. Regulating Disk v Adirondack League Club, 307 NY 475, 486-487 [1954], appeal dismissed 351 US 922 [1956]).
In 2007, ERMA was amended to require the replacement of the lever voting machines then utilized in New York elections with voting machines or systems compliant with Election Law § 7-202 and HAVA (L 2007, ch 506). Pursuant to Election Law § 7-202 (4), local boards of election are authorized to “purchase direct recording electronic machines or optical scan machines.” In effect, this legislation precludes the continued use of lever voting machines in New York. This mandate deflates the argument of the State and Board that the County plaintiffs failed to exhaust their administrative remedy by presenting lever voting machines as an alternative.
The Board is authorized to examine and certify the use of voting machines and systems pursuant to Election Law § 7-201. In so doing, the standard is to assure compliance with HAVA and Election Law § 7-202. The examination requires “a thorough review and testing of any electronic or computerized features of the machine or system” (Election Law § 7-201 [1]).
The County plaintiffs’ core thesis is that the voting systems approved by the Board are not secure and thus compromise the voting process protected under the State Constitution (see preliminary statement in verified petition/complaint annexed as exhibit A to the County’s notice of cross motion). During oral *712 argument, the County expanded on this premise by asserting the approved systems fail to comply with Election Law § 7-202 (1) (t), which specifies that a voting machine or system “not include any device or functionality potentially capable of externally transmitting or receiving data via the internet or via radio waives or via other wireless means.” The approved machines have both Ethernet ports and USB ports, features which the County plaintiffs contend are violative of Election Law § 7-202 (1) (t). The County plaintiffs have requested an evidentiary hearing to demonstrate that the approved systems do not comply with Election Law § 7-202. As explained during oral argument, the County plaintiffs maintain they do not object to the use of electronic voting machines per se, but challenge the approved machines as defective and subject to being compromised by electronic or computerized tampering.
As a threshold matter, the State and Board contend that the County plaintiffs lack the legal capacity to commence this lawsuit. The traditional rule, followed in New York, is that municipalities and their officials do not have legal capacity to challenge acts of the State and state legislation, either directly or in a representative capacity on behalf of their citizens (City of New York v State of New York, 86 NY2d 286, 289-290 [1995]; County of Albany v Hooker, 204 NY 1 [1912]). The only exception pertinent here is where compliance with a state statute would force municipal officials “to violate a constitutional proscription” (86 NY2d at 292 [citations omitted]). By compelling the County to utilize electronic voting machines, the County basically maintains that ERMA is forcing county officials to compromise the voting process protected under the State Constitution.
Specifically, the County plaintiffs allege six causes of action in their complaint: (1) that the use of unsecure electronic voting machines required by ERMA will disenfranchise voters in violation of article I, § 1 of the State Constitution; (2) that ERMA violates article II, § 8 of the State Constitution by preventing bipartisan canvassing of ballots; (3) that ERMA violates article II, § 8 because it requires local boards of election to delegate their canvassing authority to private vendors; (4) that the use of optical scan voting machines mandated by ERMA violates article II, § 7 by failing to preserve secrecy in voting; (5) that the electronic voting machines certified by the Board disregard voter intent by accepting ballots containing an overvote or undervote; and (6) that the Board’s certification of voting systems *713 in December 2009, including the ES & S system utilized by the County during the 2010 election cycle, was arbitrary and capricious.
“Legislative enactments enjoy a presumption of constitutionality, imposing a heavy burden on a party trying to overcome it” (Matter of Griffiss Local Dev. Corp. v State of New York Auth. Budget Off., 85 AD3d 1402, 1403 [2011] [internal quotation marks and citations omitted]).
Article II, § 7 of the State Constitution specifies the manner of voting in elections “shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved.” This constitutional authorization empowers the State Legislature to define alternate methods of voting. It follows that the State Constitution does not prohibit the use of electronic voting machines or systems; or mandate the use of lever voting machines. That the State Legislature, through ERMA, has opted to require the use of electronic voting machines is within its constitutional authority. The County plaintiffs’ thesis that they are being compelled to disenfranchise voters through the use of these machines is simply not persuasive. The claim is akin to that of the city officials in the City of New York case asserting that inadequate state funding compelled them to compromise the constitutional rights of students to a viable education. In response, Judge Levine reasoned, as follows:
“Surely, it cannot be persuasively argued that the City officials in question should be held accountable either under the Equal Protection Clause or the State Constitution’s public Education Article by reason of the alleged State underfunding of the New York City school system over which they have absolutely no control” (City of New York at 295).
The same holds true here.
With respect to the second and third causes of action, the 2010 amendments to Election Law article 9, implement a canvassing process to accommodate bipartisan board review. This is not a situation where the bipartisan requirements of article II, § 8 have been implicated (compare Matter of Graziano v County of Albany, 3 NY3d 475, 481 [2004]). Similarly unconvincing is the County’s contention ERMA compromises a voters right to secrecy protected under article II, § 7. Indeed, the statute expressly requires that approved voting machines or *714 systems “provide the voter an opportunity to privately and independently verify votes selected and the ability to privately and independently change such votes or correct any error before the ballot is cast and counted” (Election Law § 7-202 [1] [e]); and “be provided with a screen and hood or curtain or privacy features with equivalent function which shall be so made and adjusted as to conceal the voter and his or her action while voting” (Election Law § 7-202 [1] [m]). As for disregarding a voter’s intent in an instance of an undervote or overvote, the County plaintiffs acknowledge in their complaint that the electronic voting machines include a display screen alerting voters of an undervote or overvote (verified petition complaint para 183; Election Law § 7-202 [1] [d]).
In sum, the County plaintiffs have failed to bring their constitutional claims within any recognized exception and thus lack legal capacity to pursue these claims. The same holds true for their sixth cause of action pursuant to CPLR article 78 challenging the Board’s certification as arbitrary and capricious. As noted above, the State Legislature has empowered the Board to examine and certify the propriety of the electronic voting machines (Election Law § 7-201). That the County plaintiffs object to the machines certified by the Board does not translate into legal capacity to challenge the Board’s decision. Insofar as the County plaintiffs emphasize the restrictions defined in Election Law § 7-202 (1) (t), which are designed to prevent external tampering with the recorded vote through the Internet or other wireless means, the Board necessarily must have the means to input ballot information into the electronic voting machines, and the ability to preserve such data. Under Election Law § 9-102 (2) (c), voting machines may be equipped with “a removable electronic or computerized device” for recording the vote. That the electronic voting machines approved by the Board include Ethernet ports and USB ports does not sustain the County plaintiffs’ assertion that these machines are compromised under Election Law § 7-202 (1) (t).
Since the County plaintiffs lack the legal capacity to pursue this litigation, the motions to dismiss the petition/complaint are granted, without costs.