■ In the Matter of COUNTY OF NASSAU et al., Respondents-Appellants, et al., Petitioners, v STATE OF NEW YORK et al., Respondents, and NEW YORK STATE BOARD OF ELECTIONS et al., Appellants-Respondents. [953 NYS2d 339]—

Peters, P.J. Appeals (1) (transferred to this Court by order of the Appellate Division, Second Department) from that part of an order of the Supreme Court (Woodard, J.), entered July 23, 2010 in Nassau County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted petitioners' motion for immediate discovery, (2) (transferred to this Court by order of the Appellate Division, Second Department) from an order of said court, entered October 14, 2010 in Nassau County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted a motion by respondent Election Systems & Software for an order of confidentiality, and (3) from a judgment of the Supreme Court (Lynch, J.), entered June 24, 2011 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted certain respondents' motions to dismiss the petition.

In 2002, in order to improve the accessibility of voting systems to disabled voters, Congress enacted the Federal Help America Vote Act (hereinafter HAVA) (*see* 42 USC § 15301 *et seq.*). In an effort to comply with HAVA, the Legislature enacted the Election Reform and Modernization Act of 2005 (hereinafter ERMA) (*see* L 2005, ch 181), which, as later amended, requires the replacement of lever voting machines with electronic optical scan voting systems (*see* L 2007, ch 506, § 1; Election Law § 7-202). Petitioners, believing that electronic voting systems are vulnerable to "hacking, tampering, manipulation and malfunction," resisted efforts by respondent State Board of Elections (hereinafter SBOE) and respondent State of New York to replace lever voting machines with an electronic system manufactured by respondent Election Systems & Software (hereinafter ESS).

Due, in part, to such resistance, the United States Depart-

ment of Justice commenced an action against the SBOE and the State in 2006 seeking an injunction requiring compliance with HAVA. The parties to that action reached an agreement, and the District Court for the Northern District of New York (Sharpe, J.) issued a remedial order placing the State and the SBOE under various conditions, including a timeline for compliance. The deadline for compliance was extended twice but, by March 2010, the State and the SBOE were still not in compliance with HAVA due to petitioners' continued failure to implement the new voting machines. Shortly thereafter, the State and the SBOE applied for and were granted an injunction directing petitioners to cease their interference with efforts to comply with the District Court's previous orders and to take actions necessary to implement the new voting machines.[1]

Around that same time, petitioners commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment in Supreme Court, Nassau County, seeking, among other things, a declaration that ERMA is unconstitutional, claiming that electronic voting systems are susceptible to tampering and thus create the risk of "disenfranchisement and subversion of the democratic process." Petitioners thereafter sought an order expediting discovery with respect to various documents, software, access codes and other materials associated with the electronic voting systems which they claimed were necessary to "reveal[ ] the weaknesses and vulnerabilities of the new machines." Supreme Court (Woodard, J.) granted the motion, and the State and the SBOE appeal from the order. Subsequently, ESS was granted intervenor status for the limited purpose of protecting its intellectual property and trade secrets and successfully moved for a confidentiality order. Petitioners appeal from that order.

While those appeals were pending, the State and the SBOE each moved to dismiss the petition contending, among other things, that petitioners lacked legal capacity to challenge the constitutionality of ERMA. After venue of the proceeding was transferred to Albany County,[2] Supreme Court (Lynch, J.) determined that petitioners lacked capacity to pursue their. claims and, accordingly, dismissed the petition. Petitioners County of Nassau and John A. DeGrace, in his capacity as Nas-

---

**1.** The order granting the SBOE preliminary relief was affirmed by the Second Circuit Court of Appeals (*United States v New York State Bd. of Elections*, 312 Fed Appx 353 [2d Cir 2008]).

**2.** As a result of venue being transferred to Albany County, the Second Department transferred the appeals from the expedited discovery order and confidentiality order to this Court.

sau County Republican Commissioner of Elections, appeal from that order.

We first address the appeal from Supreme Court's judgment dismissing the petition based on petitioners' lack of capacity to sue. As petitioners Nassau County Board of Elections (hereinafter NCBOE) and William T. Biamonte, the Nassau County Democratic Commissioner of Elections, have not joined in the appeal from that order, we consider only the issue of capacity with respect to the County and DeGrace (*see Hecht v City of New York*, 60 NY2d 57, 62 [1983]; *Matter of Sanders v Slater*, 53 AD3d 716, 717 n 1 [2008]). We find that DeGrace lacks the capacity to unilaterally maintain the instant appeal. Election Law § 3-212 (2) requires that all actions of local boards of elections be approved by a majority vote of the commissioners. As the claims in this proceeding raise issues affecting the NCBOE as a whole, as opposed to those alleging a political imbalance on the NCBOE or otherwise relating to the representational rights of the political parties thereon, the pursuit of the instant appeal is an "action" of the NCBOE requiring approval of a majority of the commissioners (*see Matter of Graziano v County of Albany*, 3 NY3d 475, 480 [2004]). In the absence of any proof that such approval has been given, DeGrace lacks the capacity to maintain the present appeal on behalf of the NCBOE (*see id.* at 480; *Matter of Mohr v Schroeder*, 86 NY2d 786, 788 [1995], *revg* 216 AD2d 926 [1995], *for the reasons stated in* 162 Misc 2d 584 [1994]; *Gagliardo v Colascione*, 153 AD2d 710, 710 [1989], *lv denied* 74 NY2d 609 [1989]). As such, his appeal must be dismissed (*see Matter of Bridgham v Tutunjian*, 84 AD2d 853, 853 [1981]).

The only issue that remains, therefore, is whether the County has capacity to challenge the constitutionality of ERMA.[3] We hold that it does not. "[C]apacity concerns a litigant's power to appear and bring its grievance before the court" (*Matter of Graziano v County of Albany*, 3 NY3d at 478-479 [internal quotation marks and citation omitted]; *see Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs.*, 5 NY3d 36, 41 [2005]). As purely creatures of the State, municipal enti-

---

**3.** The petition also challenged the SBOE's 2009 certification of the electronic voting system as arbitrary and capricious, claiming that the voting system disregards voter intent by not counting the vote where the voter "overvotes" or "undervotes," and that it would be nearly impossible to install the machines prior to the fall 2010 election. However, the fall 2010 election has long since passed, and the voting system that is the subject of these claims is no longer in use and a new version has since been certified. As such, these claims are now moot (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]).

ties generally "cannot have the right to contest the actions of their principal or creator affecting them in their governmental capacity or as representatives of their inhabitants" (*City of New York v State of New York*, 86 NY2d 286, 290 [1995]; *see County of Albany v Hooker*, 204 NY 1, 10 [1912]; *Matter of County of Oswego v Travis*, 16 AD3d 733, 735 [2005]). Thus, municipalities and other local government entities lack capacity to attack actions by the State and the Legislature on constitutional grounds unless they properly invoke one of the four recognized exceptions to the rule (*see City of New York v State of New York*, 86 NY2d at 289-293; *Matter of New York Blue Line Council, Inc. v Adirondack Park Agency*, 86 AD3d 756, 758 [2011], *appeal dismissed sub nom. Matter of Clinton County v Adirondack Park Agency*, 17 NY3d 947 [2011], *lv denied sub nom. Matter of Clinton County v Adirondack Park Agency*, 18 NY3d 806 [2012]; *New York State Assn. of Small City School Dists., Inc. v State of New York*, 42 AD3d 648, 649 [2007]). Here, the County asserts " 'that if [it is] obliged to comply with the State statute [it] will by that very compliance be forced to violate a constitutional proscription' " (*City of New York v State of New York*, 86 NY2d at 292, quoting *Matter of Jeter v Ellenville Cent. School Dist.*, 41 NY2d 283, 287 [1977]; *see Matter of County of Oswego v Travis*, 16 AD3d at 735), thereby coming within an exception.[4]

However, the County cannot claim that, by complying with ERMA, *it* will be forced to violate a constitutional prohibition, because it is the NCBOE—not the County—that is responsible for the implementation of the requirements of ERMA. Indeed, nowhere is it alleged in the petition/complaint that the County plays any role in the administration of ERMA or the selection of voting machines.[5] Rather, the petition/complaint specifically alleges that it is the NCBOE that "is responsible for carrying out the elections in Nassau County," which responsibility includes, among other things, "[s]electing new voting systems approved by the [SBOE] and ERMA." And, the Election Law confirms that it is the local board of elections that is charged with the selection and implementation of voting systems and machines (*see* Election Law §§ 3-226, 7-200 [1]; 7-208). Notably, in this regard, the NCBOE does not act on behalf of the County, but is rather an independent political body separate and distinct from the County (*see Matter of Reynolds*, 202 NY 430, 441 [1911];

___

4. Petitioners do not claim the applicability of any of the other exceptions to the rule.

5. In fact, with respect to the constitutional claims raised in the petition, the only specific mention of the County—as opposed to the NCBOE—is that it is a municipal corporation organized under the laws of New York.

*Matter of Daly v Board of Elections of City of N.Y.*, 254 App Div 914, 914 [1938], *affd* 279 NY 743 [1939]). Inasmuch as the County has neither alleged nor demonstrated that it plays any role in implementing the statute it seeks to challenge, it cannot be said that the County itself will be forced to violate a constitutional proscription if obliged to comply with the statute. Thus, having failed to bring its claims within any recognized exception to the general rule that municipalities lack capacity to sue the State, the action on behalf of the County was properly dismissed (*see City of New York v State of New York*, 86 NY2d at 295).

With respect to the appeals from the two intermediate discovery orders, those appeals must be dismissed. "[T]he right to appeal from a nonfinal order terminates upon the entry of a final judgment" (*State of New York v Joseph*, 29 AD3d 1233, 1234 n [2006], *lv denied* 7 NY3d 711 [2006]; *see Matter of Aho*, 39 NY2d 241, 248 [1976]; *Cunningham v Anderson*, 85 AD3d 1370, 1371 [2011], *lv dismissed and denied* 17 NY3d 948 [2011]). Furthermore, as the interlocutory orders do not "necessarily affect[ ]" the final judgment, the appeal from the final judgment does not bring them up for review (CPLR 5501 [a] [1]; *see generally Matter of Cicardi v Cicardi*, 263 AD2d 686, 686 [1999]).

Rose, Spain and McCarthy, JJ., concur. Ordered that the appeals from the orders entered July 23, 2010 and October 14, 2010 are dismissed, without costs. Ordered that the judgment is affirmed, without costs. 