Clarke v Town of Newburgh (2025 NY Slip Op 06359)

Clarke v Town of Newburgh

2025 NY Slip Op 06359

Decided on November 20, 2025

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 20, 2025

No. 84

[*1]Oral Clarke, et al., Respondents,
v
Town of Newburgh, et al., Appellants; Letitia James, & c., Intervenor-Respondent.

Misha Tseytlin, for appellants. 
Nicholas Stephanopoulos, for respondents. 
Judith Vale, for intervenor-respondent. 
Campaign Legal Center, New York Civil Liberties Union et al., Town of Mount Pleasant et al., NAACP Legal Defense & Educational Fund, Inc., Asian American Legal Defense and Education Fund et al., State of California et al., amici curiae.

WILSON, Chief Judge

:
This case presents the question whether the Town and Town Board of Newburgh—subordinate governmental entities created by, divisible by and even extinguishable by the State Legislature—can maintain this facial constitutional challenge to the vote dilution provision of the New York Voting Rights Act ("NYVRA") (codified at Election Law § 17-200 et seq.). They cannot.
I.
Six Newburgh voters sued the Town and Town Board of Newburgh (collectively, "Newburgh") under Section 17-206 of the NYVRA, which provides that no political subdivision shall use a method of election that dilutes the votes of members of a protected class (Election Law § 17-206 [2] [a]). Plaintiffs allege that Newburgh's at-large system for electing Board members dilutes the voting power of Black and Hispanic residents. The Town of Newburgh is a political subdivision in Orange County with a population of about 32,000. The complaint alleges that as of 2022, approximately 15% of the Town's population was Black and 25% of the Town's population was Hispanic. The Town Board—which the complaint alleges has never had a Black or Hispanic member—is the Town's legislative and policy-making authority, and the five members of the Town Board are chosen through [*2]at-large elections, meaning that every registered voter residing within the Town is eligible to vote for each Town Board member position.
To make out a claim under Section 17-206 of the NYVRA, plaintiffs may show that the voting patterns are racially polarized—i.e., "there is a divergence in the candidate, political preferences, or electoral choice of members in a protected class from the candidates, or electoral choice of the rest of the electorate" (id. §§ 17-204 [6]; 17-206 [2] [b] [i] [A]). Plaintiffs may also show (alternatively or additionally) that under the totality of the circumstances, "the ability of members of the protected class to elect candidates of their choice or influence the outcome of elections is impaired" due to vote dilution (id. § 17-206 [2] [b] [i] [B]). If a plaintiff shows a violation of the vote dilution provision, the trial court must "implement appropriate remedies" to ensure voting groups have equitable access to fully participate in the political process (id. § 17-206 [5] [a]). The NYVRA mandates no specific remedy for vote dilution: among the lighter slate of remedies offered by the NYVRA for reference, a court could order additional voting hours, polling locations or voter education to cure a vote-dilution violation (id. § 17-206 [5]). Courts fashioning a remedy for a violation are not limited to the measures enumerated in the Act.
Plaintiffs allege that (1) voting patterns in Newburgh are racially polarized and (2) the at-large election system effectively disenfranchises Black and Hispanic voters, who cannot elect candidates of their choice or influence the outcome of elections. Plaintiffs seek a declaration that Newburgh's use of an at-large election system violates Section 17-206 and an injunction ordering Newburgh to implement either a districting plan or an alternative method of election for the 2025 Town Board election.
Newburgh moved for summary judgment on the bases that (1) Section 17-206 is facially unconstitutional because it violates the Equal Protection Clause of both the U.S. and New York Constitutions and (2) its Town Board elections comply with the NYVRA. Supreme Court granted Newburgh's motion for summary judgment and dismissed the complaint (see 2024 NY Slip Op 34184[U] [Sup Ct, Orange County 2024]), holding that although municipalities ordinarily may not challenge the constitutionality of State laws, Newburgh could because it alleged that it could not comply with the NYVRA without violating the Equal Protection Clause (id. at *12-13). Supreme Court also held that the NYVRA's vote dilution prohibition is facially unconstitutional (id. at *16), and struck the NYVRA "in its entirety," even though Newburgh sought to invalidate only a portion of the Act.
The Appellate Division reversed and denied Newburgh's motion for summary judgment (see 237 AD3d 14, 17, 29-30 [2d Dept 2025]). The Court held that Newburgh could not bring this constitutional challenge to the NYVRA because it failed to demonstrate that its compliance with the NYVRA would force it to violate equal protection (id. at 17, 29-30). Therefore, Newburgh could not overcome the general rule that legislative entities lack the right to sue to challenge State laws (id.). Additionally, the Appellate Division held that Supreme Court erred in striking down the NYVRA in toto (id. at 39-40); Newburgh does not challenge that latter holding on appeal. The Appellate Division granted Newburgh's motion for leave to appeal to this Court, certified the question whether its order was properly made and stayed proceedings in Supreme Court pending our ruling (see 2025 NY Slip Op 69546[U] [2d Dept 2025]).
II.
Before we can reach the merits of Newburgh's constitutional claims, we must determine whether Newburgh, as a legislatively created political subdivision, can assert a facial constitutional challenge to the NYVRA's vote-dilution provision.
The longstanding rule in New York is that political subdivisions—as creatures of the State that "exist[] by virtue of the exercise of the power of the State through its legislative department"—cannot sue to invalidate State legislation (City of New York v State of New York, 86 NY2d 286, 289-290 [1995]; see also Williams v Mayor of Baltimore, 289 US 36, 40 [1933, Cardozo, J.] ["A municipal corporation . . . has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator"]). "From very early times," New York courts have "consistently applied the Federal rule in holding that political power conferred by the Legislature confers no vested right as against the government itself" (Black Riv. Regulating Dist. v Adirondack League Club, 307 NY 475, 488 [1954]). A political subdivision's "right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate" (Matter of World Trade Ctr. Lower Manhattan [*3]Disaster Site Litig., 30 NY3d 377, 384 [2017], quoting Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 156 [1994]).
That rule is a "necessary outgrowth" of separation of powers principles (City of New York, 86 NY2d at 295-296; see also World Trade Ctr., 30 NY3d at 385 ["th(e) capacity bar closes the courthouse doors to internal political disputes between the State and its subdivisions"]; Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 239 [1984] ["it is a fundamental principle . . . that each department of government should be free from interference, in the lawful discharge of duties expressly conferred, by either of the other branches"]). It "expresses the extreme reluctance of courts to intrude in the political relationships between the Legislature, the State and its governmental subdivisions" (City of New York, 86 NY2d at 295-296). Just as the legislature has the power to create entities to perform its functions, it has the power to change, and even destroy, those entities. Separation of powers principles accordingly demand that courts do not interfere in legislative disputes raised by legislative subordinates. Those principles are the bedrock of our federal and State Constitutions alike.
The rule is firm but not absolute. In City of New York, we noted four limited exceptions mentioned in our prior caselaw: (1) when there is express statutory authorization to bring the suit; (2) when a municipality's proprietary interest in a specific fund of moneys is adversely affected by State legislation; (3) when the statute impinges upon the constitutional "Home Rule" powers of a municipality; and (4) where compliance with the statute would force the municipal challengers to violate a constitutional proscription (86 NY2d at 291-292, citing Matter of Jeter v Ellenville Cent. School Dist., 41 NY2d 283, 287 [1977]; Board of Educ. of Cent. School Dist. No. 1 v Allen (20 NY2d 109 [1967], affd 392 US 236 [1968] [other citations omitted]). We have "stress[ed] that the exceptions . . . are narrow" (World Trade Ctr., 30 NY3d at 387).
Newburgh does not contend that the first three exceptions have any application; it relies solely on the rare fourth exception—colloquially termed the "dilemma" exception—to contend that any compliance with the NYVRA would force it to violate the Equal Protection Clauses of the U.S. and New York Constitutions. Newburgh's failure to identify any case where a New York court has held that a political subdivision fit into the fourth exception evidences the narrowness of the exception. We have found no case in which a court has held it applicable. Newburgh relies on City of New York and the two cases cited therein, Matter of Jeter and Allen. In both City of New York and Jeter, neither governmental entity argued that it fit within any such exception (see City of New York, 86 NY2d at 295-296; Matter of Jeter, 41 NY2d at 287). In Allen we did not discuss or decide any issue of capacity; our holdings were limited to plaintiffs' standing and the constitutionality of the statute at issue (20 NY2d at 114-115 & n 1). The other of our cases cited by the parties do not hold that a municipality has the power to sue the State (see World Trade Ctr., 30 NY3d at 939 [holding that public benefit corporations are no different from any other governmental subdivision in their capacity to challenge State legislation]).
Newburgh's challenge to the NYVRA does not fall within the dilemma exception. Whatever might be said as to a municipality's ability to bring an as-applied challenge, showing that it will be forced to take a course of action that is unconstitutional, Newburgh is pursuing a facial invalidity claim. As we said in World Trade Center, a legislative entity's challenge to a State law must be "examined with a view towards the relief sought" (30 NY3d at 386 n3, quoting Excess Line Assn of N.Y. (ELANY) v Waldorf & Assoc., 30 NY3d 119, 123 [2017]). Newburgh seeks invalidation of the entire vote-dilution provision under Election Law § 17-206. For a facial constitutional challenge, principles of "judicial restraint" (World Trade Ctr., 30 NY3d at 385) counsel strongly against permitting subordinate units of state government from using the judiciary to second-guess the wisdom of enacted legislation. A municipality's authority to raise a challenge to a State law is at its lowest ebb when that challenge is a facial constitutional challenge, seeking to invalidate a statute in all possible applications, not merely because it allegedly placed the particular municipality in an allegedly untenable position. As we made clear in World Trade Center, "[o]ur capacity rule reflects a self-evident proposition about legislative intent: the 'manifest improbability' that the legislature would breathe constitutional rights into a public entity and then equip it with authority to police state legislation on the basis of those rights" (30 NY3d at 385, quoting City of New York, 86 NY2d at 293).
Newburgh's arguments about why we should hold that it meets a dilemma exception fail to persuade us. Newburgh has not shown that compliance with the NYVRA would force it into taking an unconstitutional action. [*4]The litigation has yet to even proceed to trial, making presently unknown: (1) whether Newburgh would face any liability; and (2) in the event it did, what a court would require it to do. The NYVRA's vote-dilution provision leaves courts wide latitude in designing remedies, so that to prevail on its facial challenge, Newburgh would have to show that "every conceivable application" of the NYVRA—i.e., every possibly remedy a trial court could order—would force it to take an unconstitutional act (McGowan v Burstein, 71 NY2d 729, 733 [1988] [to claim that a statute is "per se violative of the State Constitution," the challenging party must show the statute is unconstitutional "in every conceivable application"]). But that is not what Newburgh claims. Instead, it advances three novel arguments, none of which fits within any exception that might allow a local governmental entity to sue the State.
First, Newburgh argues that the rule preventing local legislative entities from suing the State does not apply when the local government is a defendant. It relies only on CPLR 3211 (a) (3), which allows a defendant to interpose a defense that the plaintiff asserting the cause of action against it lacks the capacity to sue, from which Newburgh argues that because it is not the plaintiff, no question of its capacity can be raised. Contrary to Newburgh's argument, the CPLR does not limit the circumstances under which the State may invoke this capacity bar, which is rooted in separation of powers principles and therefore analytically distinct from the "legal capacity to sue" (see CPLR 3211 [a] [3]). The rule barring local governments from suing the State is not grounded in a local government's general capacity to sue or be sued in its own name—which Newburgh has—but is a function of separation of powers doctrine that disables a local government from challenging the acts of the State (supra, pp. 5-6).
Second, Newburgh contends that because, in its view, the NYVRA violates the U.S. Constitution, the Supremacy Clause overcomes New York's bar prohibiting its subordinate local governments from suing it. Newburgh offers no authority for that novel proposition, which would authorize every local governmental entity to sue to challenge as unconstitutional any State legislation arguably affecting that subordinate entity.
Third, Newburgh argues that "any alteration of its race-neutral, at-large election system in order to comply with the NYVRA's vote-dilution provisions would be unconstitutional." But that contention, as explained by counsel at oral argument (see oral argument tr at 8-12), rests on the proposition that a mere finding of liability itself would place Newburgh in the position of violating the Constitution or obeying the order of the court—when there is no order of the court compelling it to do anything. And in any event, several of the potential remedies mentioned by the NYVRA to redress a finding of vote dilution—such as longer polling hours or enhanced voter education—cannot reasonably be described as alterations of an at-large election system.
Because we hold that Newburgh cannot assert this facial constitutional challenge, we do not reach the merits of its claims. Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.
Order affirmed, without costs, and certified question answered in the affirmative. Opinion by Chief Judge Wilson. Judges Rivera, Singas, Cannataro, Troutman, Kern and Kennedy concur. Judges Garcia and Halligan took no part.
Decided November 20, 2025