15-2181-cv(L)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2016

Argued: October 5, 2016
Questions Certified: January 19, 2017
Certified Questions Answered: November 21, 2017
Supplemental Briefing Concluded: April 25, 2018
Decided: June 6, 2018

Nos. 15-2181-cv(L), 15-2283-cv(Con), 15-2285-cv(Con),
15-2487-cv(Con), 15-2506-cv(Con), 15-2687-cv(Con)

IN RE: WORLD TRADE CENTER
LOWER MANHATTAN DISASTER SITE LITIGATION

STANISLAW FALTYNOWICZ, LUCYNA FOREMSKA, RUBEN ACOSTA, VLADMIR
AKOULOV, WALDEMAR BALCER, JOAQUIN CAMPUZANO, HENRYK CIBOROWSKI, JAN
DOBROWOLSKI, MAREK GLOWATY, EUGENIUSZ JASTRZEBOWSKI, ZBIGNIEW
KUCHARSKI, MARIA MORENO, IRENA PERZYNASKA, MARIAN RETELSKI, DARIUSZ
WSZOLKOWSKI, BOGUSLAW ZALEWSKI,

*Plaintiffs-Appellants*,

STATE OF NEW YORK,

*Intervenor-Appellant*,

— v. —

BATTERY PARK CITY AUTHORITY, ET AL.,

*Defendants-Appellees*.

SANTIAGO ALVEAR,

*Plaintiff-Appellant,*

STATE OF NEW YORK,

*Intervenor-Appellant,*

— v. —

BATTERY PARK CITY AUTHORITY,

*Defendant-Appellee.*

---

PETER CURLEY, MARY ANN CURLEY,

*Plaintiffs-Appellants,*

STATE OF NEW YORK,

*Intervenor-Appellant,*

— v. —

BATTERY PARK CITY AUTHORITY,

*Defendant-Appellee.*

---

B e f o r e :

LYNCH and DRONEY, *Circuit Judges,* and REISS, *District Judge.*[*]

---

[*] Judge Christina Reiss, of the United States District Court for the District of Vermont, sitting by designation.

2

‑‑‑‑‑‑‑‑‑‑

Plaintiffs brought tort and labor law claims against defendant-appellee Battery Park City Authority after their participation in post-9/11 cleanup efforts at sites defendant owns allegedly caused them to develop respiratory illnesses. The United States District Court for the Southern District of New York (Alvin K. Hellerstein, *J.*) granted summary judgment against plaintiffs on the ground that the New York law that had revived their otherwise time-barred claims was unconstitutional. Plaintiffs argue that New York's capacity-to-sue rule bars a public corporation like defendant from raising a constitutional challenge to state legislation, and that defendant's challenge fails on the merits. After certifying two questions to the New York Court of Appeals and receiving answers to those questions, we VACATE and REMAND.

‑‑‑‑‑‑‑‑‑‑

Supplemental briefing submitted by:

Gregory J. Cannata, Gregory J. Cannata & Associates, LLP, New York, NY, *for* Plaintiffs-Appellants Stanislaw Faltynowicz, Lucyna Foremska, Ruben Acosta, Vladmir Akoulov, Waldemar Balcer, Joaquin Campuzano, Henryk Ciborowski, Jan Dobrowolski, Marek Glowaty, Eugeniusz Jastrzebowski, Zbigniew Kucharski, Maria Moreno, Irena Perzynaska, Marian Retelski, Dariusz Wszolkowski, Boguslaw Zalewski.

Paul J. Napoli, Napoli Shkolnik PLLC, New York, NY, *for* Plaintiffs-Appellants Santiago Alvear, Peter Curley, Mary Ann Curley.

Steven C. Wu, Deputy Solicitor General, Eric Del Pozo, Assistant Solicitor General, Andrew W. Amend, Senior Assistant Solicitor General, *for* Barbara D. Underwood, Acting Attorney General for the State of New York, New York, NY, *for* Intervenor-Appellant State of New York.

Daniel S. Connolly, Bracewell LLP, New York, NY, *for* Defendant-Appellee Battery Park City Authority.

———————

PER CURIAM:

This action involves the tort and labor law claims of workers whose participation in post-9/11 cleanup efforts allegedly caused them to develop respiratory illnesses. The United States District Court for the Southern District of New York (Alvin K. Hellerstein, *J.*) granted summary judgment against the workers, holding that the law that had revived their otherwise time-barred claims was unconstitutional under the New York State Constitution. We previously certified to the New York Court of Appeals ("NYCOA") two questions implicated by this consolidated appeal. The NYCOA having answered, we now VACATE and REMAND.

## BACKGROUND

Plaintiffs are eighteen workers who claim to have developed respiratory illnesses as a result of their participation in the cleanup efforts following the terrorist attacks of September 11, 2001. They sued defendant Battery Park City Authority ("BPCA"), a public corporation created by the New York Legislature,

4

*see* N.Y. Pub. Auth. Law § 1971, which owns several of the sites where plaintiffs worked and which allegedly failed to ensure plaintiffs' and other workers' safety.

The district court dismissed plaintiffs' original suits, as well as hundreds of similar ones, for failing to serve timely notices of claim on BPCA and other public entities named as defendants. *See* N.Y. Gen. Mun. Law § 50-e(1)(a) ("In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, . . . the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises . . . .").

The New York State Legislature responded to that rash of dismissals by passing "Jimmy Nolan's Law," N.Y. Gen. Mun. Law § 50-i(4)(a), which revived "for one year all time-barred claims against public corporations for personal injuries sustained by workers who participated in post-9/11 rescue, recovery, or cleanup efforts." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 62 (2d Cir. 2017). Plaintiffs thereafter refiled their claims against BPCA.

BPCA sought and obtained summary judgment on plaintiffs' claims on the ground that Jimmy Nolan's Law was unconstitutional under the New York State

Constitution. Plaintiffs appealed the district court's decision to this Court, arguing that New York's capacity-to-sue rule, under which "municipalities and other local governmental corporate entities and their officers lack capacity to mount constitutional challenges to acts of the State and State legislation," *City of New York v. State of New York*, 86 N.Y.2d 286, 289 (1995), barred a public corporation like BPCA from challenging the constitutionality of state legislation and, in any event, that BPCA's challenge failed on the merits.

Finding an "absence of authoritative guidance" on the standards we should use to evaluate plaintiffs' arguments, *In re World Trade Ctr.*, 846 F.3d at 69, we certified two questions to the NYCOA:

> (1) Before New York State's capacity-to-sue doctrine may be applied to determine whether a State-created public benefit corporation has the capacity to challenge a State statute, must it first be determined whether the public benefit corporation "should be treated like the State," *see Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 192 (N.Y. 1987), based on a "particularized inquiry into the nature of the instrumentality and the statute claimed to be applicable to it," *see John Grace & Co. v. State Univ. Constr. Fund*, 375 N.E.2d 377, 379 (N.Y. 1978), and if so, what considerations are relevant to that inquiry?; and
>
> (2) Does the "serious injustice" standard articulated in *Gallewski v. H. Hentz & Co.*, 93 N.E.2d 620 (N.Y. 1950),

6

> or the less stringent "reasonableness" standard
> articulated in *Robinson v. Robins Dry Dock & Repair Co.*,
> 144 N.E. 579 (N.Y. 1924), govern the merits of a due
> process challenge under the New York State
> Constitution to a claim-revival statute?

*In re World Trade Ctr.*, 846 F.3d at 60–61 (brackets and alterations omitted).

The NYCOA has now responded. The Court answered the first question that "no 'particularlized inquiry' is necessary to determine whether public benefit corporations should be treated like the State for purposes of capacity." *Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 383 (2017). As a result, a public benefit corporation is treated like any other state entity and is subject to the "general rule" that "state entities lack capacity to challenge the constitutionality of a state statute," with only a few "narrow" exceptions. *Id.* at 383, 387.

The Court reformulated the second question to ask "[u]nder *Robinson* and *Gallewski*, what standard of review governs the merits of a New York State Due Process Clause challenge to a claim-revival statute?" *Id.* at 394 (internal quotation marks omitted). The Court then held that "a claim-revival statute will satisfy the Due Process Clause of the State Constitution if it was enacted as a reasonable response in order to remedy an injustice." *Id.* at 400.

Following supplemental briefing from the parties on the implications of the NYCOA's answers to the certified questions, this appeal is ripe for resolution.

## DISCUSSION

The NYCOA's decision makes clear that BPCA, like any other state entity, may challenge the constitutionality of Jimmy Nolan's Law only if it qualifies for one of the "narrow" exceptions to the capacity-to-sue rule. *Id.* at 387. For the reasons that follow, we conclude that no such exception applies and thus vacate the decision of the district court.

BPCA claims that it qualifies for the proprietary-interest exception, which permits a state entity to challenge the constitutionality of "State legislation [that] adversely affects a municipality's proprietary interest in a specific fund of moneys." *City of New York v. State*, 86 N.Y.2d 286, 291–92 (1995). BPCA's theory is that by allowing plaintiffs' suits to proceed, Jimmy Nolan's Law potentially exposes BPCA to liability that would require payment from BPCA's general fund in satisfaction of a court judgment. That theory does not fit the "narrow" exception that the NYCOA has described. *See Matter of World Trade Ctr.*, 30 N.Y.3d at 387.

Two cases serve as helpful guideposts in assessing the applicability of the exception. In the first, *Gulotta v. State*, three New York counties and their county executives brought an action challenging "the system of State mandates," which consisted of "various laws which require[d] the [c]ounties to make expenditures." 645 N.Y.S.2d 41, 42 (2d Dep't 1996). The New York Supreme Court ruled that the plaintiffs had the capacity to sue, but the Appellate Division disagreed. *Id.* The Appellate Division recognized that "municipalities and other local governmental corporate entities and their officers lack the capacity to mount constitutional challenges" to state legislation, and expressly held — despite the fact that the laws at issue required county expenditures — that the proprietary-interest exception did not apply. *Id.* at 42–43. In "stress[ing]" the narrowness of the exceptions to the capacity-to-sue rule in *Matter of World Trade Center*, the New York Court of Appeals cited that holding as authoritative. 30 N.Y.3d at 387.

The second case, and the principal case on which BPCA relies, is *County of Rensselaer v. Regan*, 80 N.Y.2d 988 (1992). In 1981, the New York State Legislature enacted the "'special traffic options program for driving while intoxicated' (STOP-DWI) whereby a participating county could receive fines and forfeitures collected by courts within that county for alcohol-related driving offenses." *Id.* at

9

990. A decade later, the Legislature passed another law that diverted to the state a percentage of the drunk driving funds to which participating counties were entitled. *Id.* at 990–91. The plaintiff counties brought a constitutional challenge to the new law, and the New York Court of Appeals held that their challenge could be heard because, "STOP-DWI legislation having been neither amended nor repealed, the participating counties ha[d] a proprietary claim to the fines and forfeitures" to which the later legislation was directed. *Id.*

There may be cases that fall between *Gulotta* and *Rensselaer*, and potentially present a close question on whether the proprietary-interest exception applies. This is not one of them. Jimmy Nolan's Law, at most, has an indirect effect on BPCA's general fund, making the present case an easier one than *Gulotta*, where the challenged laws actually "require[d] the [c]ounties to make expenditures." 645 N.Y.S.2d at 42. And Jimmy Nolan's Law is easily distinguished from the law at issue in *Rensselaer*. There, the allegedly unconstitutional law itself was aimed at specific funds to which the counties were otherwise entitled. Here, by contrast, the challenged law has nothing to do with any fund, let alone a specific one, and simply removes a procedural obstacle to suits of a type to which BPCA is regularly exposed.

10

Indeed, if BPCA's logic were followed, the proprietary-interest exception would permit a public entity to challenge the constitutionality of *any* law that could potentially expose it to greater liability, so long as the entity claimed that it had some sort of fund from which a judgment might be paid. That would hardly be a narrow exception to New York's capacity-to-sue rule.

We have little difficulty concluding that, in this case, BPCA does not qualify for any exception to the general rule that state entities lack the capacity to raise constitutional challenges to state statutes, and its challenge to Jimmy Nolan's Law must therefore be rejected. Accordingly, we need not reach the question whether that law is consistent with the Due Process Clause of the New York State Constitution.

## CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case for further proceedings.

11